UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

**COOPER RESOURCES, LLC,**

      **Plaintiff,**

v.

**DALE ALLDREDGE, individually and d/b/a HAMMER BIT & SUPPLY,**

      **Defendant.**

Case No. 20-CV-457-JFH

## ORDER

This matter is before the Court on the Motion for Entry of Default Judgment ("Motion") filed by Plaintiff Cooper Resources, LLC ("Plaintiff") [Dkt. No. 10]. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff filed its Complaint on December 8, 2020, asserting claims for product liability, breach of contract, breach of implied warranties, and breach of express warranties. Dkt. No. 2. No Answer or responsive pleading was filed, and on February 18, 2021, upon Plaintiff's motion, a Clerk's Entry of Default was filed. Dkt. No. 9. Plaintiff filed a Motion for Default Judgment on February 19, 2021. Dkt. No. 10. On March 4, 2021, one day before the deadline to respond to Plaintiff's Motion expired, Defendant Dale Alldredge ("Alldredge") filed a Motion to Extend Time, seeking an additional ten (10) days in which to respond. Dkt. No. 13. The Court denied the motion, finding that Alldredge failed to show an extension was warranted because he did not meet the good cause standard for an extension of time required under Rule 6(b)(1). Dkt. No. 16. Alldredge timely filed his Response to Plaintiff's Motion on March 5, 2021 [Dkt. No. 17], and Plaintiff subsequently filed its Reply [Dkt. No. 19].

**AUTHORITY**

I. **Personal Jurisdiction**

Before it may enter a default judgment, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties," as "[d]effects in personal jurisdiction . . . are not waived by default when a party fails to appear or to respond." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).[1]  *See also Dennis Garberg & Assocs., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771-72 (10th Cir. 1997) ("We have noted earlier that judgment by default should not be entered without a determination that the court has jurisdiction over the defendant."). "In reviewing its personal jurisdiction, the Court does not assert a personal defense of the parties; rather, the Court exercises its responsibility to determine that it has the power to enter the default judgment." *Williams*, 802 F.2d at 1203.

Plaintiff "bears the burden of establishing personal jurisdiction over [a] defendant." *Intercon, Inc. v. Bell Atl. Internet Sol.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014); *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Where, as here, the issue is presented for decision on the basis of allegations and affidavits or written materials, Plaintiff "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation omitted). To establish personal jurisdiction of a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers*, 618 F.3d at 1159 (internal quotation omitted).

---

[1] Alldredge contests personal jurisdiction but does not contest subject matter jurisdiction. Dkt. No. 16.

Under Oklahoma law, the personal jurisdiction inquiry is simply the due process analysis. *Intercon*, 205 F.3d at 1247; *see Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012). The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

## II.   Default Judgment

"The preferred disposition of any case is upon its merits and not by default judgment. However, this judicial preference is counterbalanced by considerations of social goals, justice and expediency, a weighing process which lies largely within the domain of the trial judge's discretion." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (citation omitted).

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. Pursuant to Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the court clerk enters default, the non-defaulting party must apply to the Court for a default judgment pursuant to Rule 55(b)(2). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter." *Id.*

After the clerk enters default but before the Court enters default judgment, the defaulting party may request the Court set aside the clerk's entry of default under Rule 55(c) upon a showing of good cause. *Id.* After the Court enters default judgment, the defaulting party may seek to have

the judgment set aside under Rule 60(b). This requires that the party show both a good reason for the default and the presence of a meritorious defense. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978).

## ANALYSIS

### I. Personal Jurisdiction

There are two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Court of Cali.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)).

"As a general matter . . . if a nonresident party has continuous and systematic general business contacts with the forum state, general personal jurisdiction might exist." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). Plaintiff has not argued that Alldredge has sufficiently systematic contacts with Oklahoma to warrant general personal jurisdiction. Instead, it argues that Alldredge has the necessary minimum contacts with Oklahoma for the Court to exercise specific personal jurisdiction over him. Dkt. No. 19 at 13.

For a court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers*, 137 S. Ct. at 1780; *see also Daimler*, 571 U.S. at 127. In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted)). Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

"A specific jurisdiction analysis involves a two-step inquiry." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). "First [the Court] must consider whether 'the defendant's conduct and connection with the forum are such that he should reasonably be anticipated being haled into court there.'" *Id*. (quoting *World-Wide Volkswagen*, 444 U.S. at 297). The minimum contact inquiry requires both that the out-of-state defendant "purposefully directed" its activities at residents of the forum state and that the plaintiff's injuries "'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermillon Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King Corp.,* 471 U.S. at 477). "Second if the defendant's actions create sufficient minimum contacts, [the Court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Benton*, 375 F.3d at 1075.

Alldredge argues that specific personal jurisdiction is lacking because he is an Illinois resident who "never directed advertisement to Oklahoma, nor does he maintain an internet presence." Dkt. No. 16 at 2-3.[2] Plaintiff counters that, "[k]nowing [Plaintiff] was headquartered in Oklahoma, between 2018 and 2020, Defendant directly solicited business from the President of [Plaintiff] (who is also located in Morris, Oklahoma) over eighteen (18) times via Facebook Messenger, not including the many phone calls [Plaintiff's] employees received." Dkt. No. 19 at 14. Plaintiff attached screenshots of the Facebook messages as an exhibit to its Reply. Dkt. No. 19-1. In Plaintiff's estimation, "the causes of action in this case proximately resulted from actions that the defendant himself undertook" because of "Defendant's multiple and purposefully directed

---

[2] Alldredge also challenges venue. Dkt. No. 16 at 2. The Court declines to address this argument, as—assuming without deciding that venue is improper—"Defects in venue do not affect the court's power and a valid default judgment may be entered by a court notwithstanding the defect." *Williams*, 802 F.2d at 1203.

solicitations towards [Plaintiff]" as well as "Defendant's resulting manufacturing and sale of products for and to [Plaintiff]." Dkt. No. 19 at 14 (emphasis removed).

"In determining if it has personal jurisdiction over [a] defendant[], the Court may consider affidavits and other documentary evidence submitted by the parties." *Vestring v. Halla*, 920 F. Supp. 2d 1189, 1193 (D. Kan. 2013) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007). However, "a district court relying on documentary evidence in its consideration of a motion to dismiss may not weigh the factual evidence." *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). "Thus, the determination involves an application of the law to the facts as set forth in the affidavits and complaints, favoring the plaintiff where a conflict exists, as well as a determination as to the legal sufficiency of plaintiff's jurisdictional allegations in light of the facts presented." *Id.*

Plaintiff's Complaint is sparse on specific jurisdictional allegations beyond the formulaic conclusion that jurisdiction and venue are proper. Dkt. No. 2. However, the Facebook Messenger screenshots Plaintiff filed with its Reply clearly demonstrate Alldredge's efforts to solicit Oklahoma-based business from Plaintiff.

Alldredge started the conversation with Plaintiff's president on August 28, 2018. Dkt. No. 19-1 at 4. He messaged repeatedly, often with no response or encouragement from Plaintiff, including on: August 29, 2018 ("Hello sorry to bother you again Just checking if you had anything you would like rebuilt"); September 4, 2018 ("Let me know if you have any holeopeners to rebuild or need any be happy to help"); September 18, 2018 ("Hi Kelly just checking in.[ ]Let me know if there is anything i can help you with"); October 15, 2018 ("Hi just checking back in with you.[ ] didnt know if you had a chance to talk to your super about holeopeners.[ ]Let me know if i can help you"); January 9, 2019 ("We are doing a lot of rebuilding now let me know if I can help

you"); March 19, 2019 ("Let me know if i can help you with anything"); April 17, 2019 ("Kelly Dont mean to bother you.[ ]if i can help you with any reamers keep me in mind"); May 16, 2019 ("Hello Kelly just checking in"); and November 22, 2019 ("Kelly if i can ever rebuild your holeopeners or make you new Call me [redacted]"). *Id.* at 4-10.[3] Alldredge's Facebook messages clearly relate to the subject of the litigation and show purposeful direction of his business efforts toward Plaintiff, an Oklahoma-based entity. Alldredge's conduct and connection with Oklahoma are such that he should reasonably have anticipated being haled into court here.

The Court must next consider whether exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. Based on the same reasons as discussed above, the Court finds that the exercise of personal jurisdiction over Alldredge would not offend these notions. Alldredge repeatedly solicited the Oklahoma-based Plaintiff's business regarding the same machinery that is at issue in the lawsuit. The Court is satisfied it has personal jurisdiction over Alldredge.

## II.   Default Judgment

"[E]ntry of a default judgment is committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). Alldredge was served on December 29, 2020. Dkt. No. 7. His responsive pleading deadline under Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure was January 19, 2021. Alldredge has not filed a responsive pleading. The court clerk entered default upon Plaintiff's motion on February 18, 2021. Dkt. No. 9.

An Oklahoma attorney entered a special appearance for Alldredge on March 4, 2021 "for the limited purpose of advancing entry of Ted Hampson, *pro hac vice*, as primary counsel." Dkt. No. 11. Hampson applied for *pro hac vice* admission the same day. Dkt. No. 12. Alldredge also

---

[3] The Court reproduces Alldredge's text messages with the original spelling and capitalization.

moved for an extension of time to respond to the Motion [Dkt. No. 13], which the Court denied [Dkt. No. 16]. In its Order denying Alldredge's Motion to Extend Time, the Court noted that Alldredge requested a ten-day extension of time without explanation regarding why the extension was sought. Dkt. No. 16. Alldredge did not claim to have made diligent efforts to meet the response deadline or articulate why he was unable to meet the deadline despite those efforts. *Id.* The Court held this was insufficient to meet the good cause standard for an extension of time under Rule 6(b)(1). *Id.*

Alldredge's Oklahoma attorney filed a Motion to Withdraw on May 12, 2021. Dkt. No. 23. The Court granted this Motion on May 18, 2021 [Dkt. No. 24] and, on the same day, entered a Minute Order directing *pro hac*-admitted attorney Hampson to show association with local counsel pursuant to LCvR 83.3 [Dkt. No. 25]. To date, Hampson has not complied with this Order.

Alldredge filed a Response in opposition to Plaintiff's Motion. Dkt. No. 16. As in his Motion to Extend Time, Alldredge did not claim with any specificity to have made diligent efforts to respond to Plaintiff's Complaint or articulate why he never filed a responsive pleading. *Id.* Alldredge did not explicitly request the Court set aside the Clerk's Entry of Default under Rule 55(c). Nevertheless, the Court will assess Alldredge's opposition under the good cause standard for vacating the clerk's entry of default set forth by Rule 55(c).

"The 'principal factors in determining whether a defendant has met [Rule 55(c)'s] good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense.'" *SAC Ill. Oil Exploration, LLC v. Taylor*, No. 13-CV-153-TCK-TLW, 2013 WL 5652044, at *1 (quoting *Hunt v. Ford Motor Co.*, No. 94-3045, 1995

WL 523646, at *3 (10th Cir. Aug. 29, 1995)). "The factors are not 'talismanic,' and a court may consider other factors." *Id.*

Regarding the first factor, "[g]enerally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default." *United States v. Timbers Pres.*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820 (1996). Here, Alldredge has offered no excuse for his delay in litigating—twice—after being personally served with the lawsuit. Dkt. No. 7; Dkt. No. 13; Dkt. No. 17. Receiving actual notice and failing to respond is culpable conduct. *Timbers Pres.*, 999 F.2d at 455 (citing *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).

Regarding the second factor, Alldredge offers a conclusory statement that there would be no prejudice to Plaintiff if the merits were properly and fully presented [Dkt. No. 17 at 2] but neither party offers detail such that the Court may thoroughly assess the level of prejudice that would attach [Dkt. No. 10; Dkt. No. 17; Dkt. No. 19].

Regarding the third factor, "to determine the meritorious nature of a defense, the trial court must have before it more than mere allegations that a defense exists." *Gomes*, 420 F.2d at 1366. Alldredge claims he has a meritorious defense to the action and provides two sentences regarding Plaintiff's factual averments in the Complaint. Dkt. No. 17 at 1. His argument does not address Plaintiff's claims for strict products liability, breach of implied warranties, breach of express warranties, and breach of contract with specificity or confidence. Instead, Alldredge offers a brief statement of "reasons the tool *might* have failed" and speculates that "Plaintiff's petition [sic] *seems to speak* to having modified the tool, which *likely* contributed to its failure." *Id.* (emphasis added). These speculations do not provide "the support of facts underlying the defense" and thus do "not sustain the burden of the defaulting party." *Gomes*, 420 F.2d at 1366.

9

Finally, the Court may consider additional factors when exercising its sound discretion to grant or deny default judgment. The Court notes that Alldredge and his counsel have failed to comply with the Court's May 2021 Order to show association with local counsel pursuant to LCvR 83.3. Dkt. No. 25. Alldredge's failure to enter new counsel does not inspire confidence in his plans to "properly present [his] arguments to this Court." Dkt. No. 17 at 3. This is an additional factor in favor of the Court exercising its broad discretion to grant default judgment.

### III.  Damages

Plaintiff alleges damages totaling $296,311.94: $10,046.00 to purchase the original reamer from Alldredge; $145,625.69 for a fishing crew to remove the original reamer from a hole; $15,600.00 for negotiations with a contractor regarding Plaintiff's delay; $114,310.58 in business costs from a six-week delay (including $81,137.49 for payroll, $2,628.25 for mud, $1.806.56 for water, $13,276.92 for fuel, $11,555.64 for track hoe rent, $3,105.72 for generator rental, and $800 for frac tank rental); $1,300.77 to transport Alldredge's replacement reamer; $1,700.00 for a welder to fortify the replacement reamer; $7,270.00 for attorney fees in this action; and $458.90. Dkt. No. 10-2. Under Rule 55(b), the Court may conduct a hearing to determine the amount of damages. The Court believes a hearing is necessary. Pursuant to 28 U.S.C. § 636(b)(1), the Court will refer the matter of damages to a Magistrate Judge for an evidentiary hearing and for the preparation of a Report and Recommendation on the proper amount Plaintiff should be awarded.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is GRANTED.

Dated this 17th day of August 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE